UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VANESSA G. MARKEL,

       Plaintiff,                         CIVIL ACTION NO. 08-14407

      v.                                  DISTRICT JUDGE NANCY G. EDMUNDS

COMMISSIONER OF                MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.    PROCEDURAL HISTORY**

    *A.    Proceedings in this Court*

On October 16, 2008, Plaintiff Vanessa Markel (Plaintiff) filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability benefits and Supplemental Security Income (Dkt. No. 2). This matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos. 8, 9).

> B.     *Administrative Proceedings*

Plaintiff filed the instant claims on September 22, 2005, alleging that she became unable to work on August 31, 2001, due to depression, post-traumatic stress disorder and social anxiety (Tr. at 50, 56, 220). The claim was initially disapproved by the Commissioner on March 20, 2006 (Tr. at 37). Plaintiff requested a hearing and, on April 14, 2008, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Michael F. Wilenkin, who considered the case *de novo*. In a decision dated May 5, 2008, the ALJ found that Plaintiff was not disabled (Tr. at 22). Plaintiff requested a review of this decision on July 8, 2008 (Tr. at 9, 10). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on September 25, 2008, denied Plaintiff's request for review. (Tr. at 4-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED** and that the findings of the Commissioner be **AFFIRMED**.

**II.    STATEMENT OF FACTS**

> A.     *ALJ Findings*

Plaintiff was 51 years of age at the time of the ALJ's decision (Tr. at 18, 231). Plaintiff has a high school education and completed two years of college (Tr. at 18, 233). She has worked

in the past as a photo assistant, computer lab technician, billing clerk, administrative assistant, executive secretary and sales assistant (Tr. at 18).

The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since August 31, 2001, her alleged disability onset date (Tr. at 16). At step two, the ALJ found that Plaintiff's major depressive disorder, possible attention deficit disorder and ethanol abuse were "severe impairments" within the meaning of the second sequential step. *Id*. The ALJ also noted that Plaintiff suffered from non-insulin dependant diabetes, with no residual symptoms. *Id*. At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id.* At step four, the ALJ found that Plaintiff could not perform her previous work, which was at the semi-skilled and/or skilled level (Tr. at 21).

However, the ALJ then found that Plaintiff had the residual functional capacity (RFC) to "perform a full range of work at all exertional levels but is relegated to unskilled work" and that "[a]ny inability to perform sustained work at the unskilled level is due to ethanol abuse" (Tr. at 18). In arriving at this RFC, the ALJ noted that Plaintiff's "records taken as a whole indicate that [Plaintiff's] depression can be controlled with treatment in the form of medication to the extent that she would be able to perform unskilled work on a sustained basis" (Tr. at 19). The ALJ further noted that, although Plaintiff testified during the hearing that she underwent a rehabilitation program for drinking and had been sober since 2006, Plaintiff's medical records documented continuing alcohol abuse past 2006 (Tr. at 20). In particular, the ALJ noted that medical records dated April 2007 stated that Plaintiff was still drinking. *Id*. The ALJ further

noted that records from January 2008 documented daily alcohol use by Plaintiff. *Id*. Given the inconsistencies between Plaintiff's testimony that she had been sober since 2006 and Plaintiff's medical records – which indicated that she was still drinking – the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of Plaintiff's symptoms were not fully credible (Tr. at 21). Thus, the ALJ ultimately found that "it is reasonable to conclude that ongoing sobriety would result in [Plaintiff's] ability to perform unskilled work on a sustained basis without difficulty" (Tr. at 20).

At step five, the ALJ denied Plaintiff benefits, since Plaintiff could perform a significant number of jobs available in the national economy (Tr. at 21). Using the Commissioner's grid rules as a guide, the ALJ found that section 204.00 (applicable to claimants with only non-exertional limitations) of the Medical-Vocational Guidelines directed a finding of "not disabled" (Tr. at 21-22).

  B.  *Administrative Record*

    1.  **Plaintiff's Testimony and Statements**

During the hearing, Plaintiff testified that she last worked in 2004 and was last employed on a full-time basis in 2001 (Tr. at 235). The ALJ asked Plaintiff what continuing problems kept her from working and she stated "for 5 days out of the month... I don't get out of bed. Then I don't eat, don't sleep good, I have nightmares. I cry a lot and absenteeism is a problem, when I try to work I have trouble concentrating. I have trouble completing my task (sic) on time in a timely fashion... when I am employed, I get in fights with superiors and coworkers because I lose

my temper. And I get fired. I have been terminated from just about every job I've had since I was 16. And this goes back 25 years" (Tr. at 235).

Plaintiff testified that she treated with a number of psychiatrists over the years (Tr. at 236-237). Plaintiff further testified that she avoided prescription medications as she was afraid of them, but that she self-medicated with alcohol and marijuana (Tr. at 237-238). Plaintiff claimed that she stopped using alcohol and marijuana in 2006, after completing a 21-day program in the fall of 2005 (Tr. at 238-239). Plaintiff stated that she was hospitalized twice at "St. Joseph East" for outpatient psychiatric treatment in 2005 and 2006 (Tr. at 241). Plaintiff also stated that she neglects her personal needs, such as bathing, dressing and feeding herself (Tr. at 241). She stated that she does her own household chores but that "frequently I don't clean or anything" (Tr. at 242). As for hobbies, Plaintiff stated that she likes to go to the movies, read and that she wanted to get back into exercise and get healthy again (Tr. at 242). Finally, Plaintiff testified that she has diabetes, but that she frequently forgets to check blood sugars, often experiences low-energy and nausea and that she doesn't "heal as fast when I get hurt" (Tr. at 244).

### 2. Medical Evidence

Plaintiff was treated for major depression at Perspectives of Troy, P.C., from December 13, 2000 to May 23, 2001 (Tr. at 116). The record indicates that Plaintiff withdrew from the program in May 2003, as Plaintiff was "satisfied with progress to date" (Tr. at 116). On October 10, 2003, Plaintiff was hospitalized in an outpatient psychiatric program at St. Joseph's Mercy of Macomb for treatment of depression and passive suicidal ideations (Tr. at 131). Fedor Opochinsky, M.D., Plaintiff's attending physician, noted that Plaintiff "admitted that the main

reason for her coming to the program was to get... medications" (Tr. At 131). Dr. Opochinsky prescribed Wellbutrin, Prozac and Seroquel and noted that "the very next day, [Plaintiff] told us that she was fine and felt that maybe she should be discharged." *Id*. Dr. Opochinsky suggested that Plaintiff stay longer and that she might benefit from group therapy; Plaintiff agreed to stay in the program a bit longer. *Id*.

Six days later, on October 16, 2003, Plaintiff was discharged from the psychiatric program with a two-week supply of medications (Tr. at 131). Dr. Opochinsky noted that Plaintiff "had a bright affect. She stated normal mood. She denied any suicidal intent or plan, any homicidal ideations, any auditory hallucinations, paranoid ideations, ideas of reference, thought insertion, or thought withdrawal. Her speech was clear and logical. She related reasonable plans for the future. She told [me] that she came to the Partial Hospitalization Program just as to (sic) a respite, that starting tomorrow she got a job along with her boyfriend and that they are going to paint somebody's place. She feels comfortable on the present medications" (Tr. at 131). Upon discharge, Dr. Opochinsky gave Plaintiff a Global Assessment of Functioning (GAF) score of 50 (Tr. at 132).[1]

---

[1] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASSOC., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, (4th ed. 1994) at 30. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *See id.* at 32. A GAF score of 31-40 indicates "some impairment in reality testing or communication (*e.g.*, speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood." *Id*. A GAF of 41 to 50 means that the patient has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." *Id*. A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning. *Id*.

Plaintiff's medical records do not indicate that she sought or received any mental health treatment between October 2003 and September 2005. On September 20, 2005, Plaintiff was hospitalized in an outpatient psychiatric program at St. Joseph's Mercy of Macomb for a second time (Tr. at 118-130). Margaret Samaan, M.D., Plaintiff's attending physician, noted that Plaintiff "presented with complaints of increased anxiety and depression for the last three to four weeks...Is complaining of persistent anxiety, feeling hopeless and helpless, feeling worthless, anhedonia, decreased energy and being slowed down...having difficulty concentrating and making decisions...trouble falling and staying asleep. Increased appetite. Irritable and very restless and pacing back and forth" (Tr. at 122). Dr. Samaan further noted that Plaintiff "described her trigger/stressor as she is not able to keep a job, she does not have any family support and recently she was physically assaulted by her boyfriend of three years and currently he is in jail for assault. She did admit she has been having a drinking problem and last time she drank was a couple weeks ago and [it] was one pint of vodka" (Tr. at 122). Dr. Samaan diagnosed Plaintiff with major depression (recurrent), alcohol dependence and marijuana dependence (Tr. at 123). Dr. Samaan discontinued Plaintiff's Wellbutrin and Prozac, continued Seroquel and prescribed Effexor. *Id*. Dr. Samaan instructed Plaintiff "to abstain completely from alcohol and marijuana" and noted that Plaintiff's prognosis was "guarded due to poor compliance with outpatient treatment and her substance abuse" (Tr. at 123).

Plaintiff was discharged from her second visit to an outpatient psychiatric program on September 27, 2005 (Tr. at 118). Upon discharge, Dr. Samaan noted Plaintiff admitted "that she relapsed on alcohol and marijuana." *Id*. As a result, Dr. Samaan prescribed Campral for alcohol

craving. Dr. Samaan also noted that Plaintiff "was requesting to be helped regarding applying for Social Security disability as she says that she is not able to maintain any job for the last year due to her depression." *Id*. Plaintiff was discharged with a one-month supply Campral, Effexor and Seroquel and was "instructed to maintain abstinence from any illicit drug use." *Id*.

A state agency psychiatrist, F. Qadir, M.D., examined Plaintiff on January 6, 2006 (Tr. at 169). Dr. Qadir diagnosed Plaintiff with major depression (recurrent), history of alcohol/marijuana abuse and posttraumatic stress disorder (in remission) (Tr. at 171). Dr. Qadir assigned Plaintiff a GAF score of 50. *Id.* Edward Czarnecki, Ph.D., evaluated Plaintiff's medical records in February 2006 and concluded that Plaintiff exhibited mild limitations of daily and social functioning and moderate restriction with respect to maintaining concentration, persistence or pace (Tr. at 108). Dr. Czarnecki concluded that Plaintiff retained "the mental capacity to sustain a routine of simple work activity" but that "she may be limited in meeting a detailed work demands" (Tr. at 114).

On June 8, 2006, Edgard Pedraza, M.D., described Plaintiff as having limitations in her ability to do work-related activities (Tr. at 173-174). In particular, Dr. Pedraza stated that Plaintiff would have difficulty maintaining regular job attendance, performing at a consistent pace, maintaining socially appropriate behavior and setting realistic goals independently of others. *Id.* Dr. Pedraza noted that Plaintiff's difficulties stemmed from inconsistently following medical/psychiatric treatment and her inability to maintain sobriety. *Id*.

Robert Bernstein, M.D., examined Plaintiff on March 26, 2007, and diagnosed her with adult residual attention deficit disorder, history of major depressive disorder and history of poly-

substance abuse (alcohol, marijuana and Vicodin) (Tr. at 188-190).  Dr. Bernstein assigned Plaintiff a current GAF score of 65 and a past GAF score of 75 (Tr. at 190).  Dr. Bernstein gave Plaintiff a "fair" prognosis, prescribed Zoloft, Adderall and instructed Plaintiff to take an increased dosage of Seroquel.  *Id.*   Dr. Bernstein also "cautioned [Plaintiff] against any substance abuse." *Id*.

On January 14, 2008, Plaintiff visited the Oakland Psychological Clinic (Tr. at 205). Plaintiff reported that she had a job interview for waitress position at the Olive Garden the following day.  *Id.*  At this time, Plaintiff admitted drinking alcohol daily and binge drinking on holidays (Tr. at 208, 212).  On February 1, 2008, Plaintiff reported to an Oakland Psychological Clinic clinician that she was "happy" (Tr. at 202).  The clinician's notes also indicate that Plaintiff "said now [she] only needs part-time work, [she] cannot work full-time [because she] would lose aid." *Id.*

### 3. Vocational Expert

Raymond Dulecki testified at the hearing as a vocational expert (VE) (Tr. at 245-246). Mr. Dulecki testified that Plaintiff's past work as an executive secretary would be regarded as skilled work, performed at a light/sedentary level.  *Id*.  Mr. Dulecki further stated that Plaintiff's past work as an administrative assistant and in accounting would be regarded as semi-skilled work, also performed at a light/sedentary level.  *Id*.  The ALJ then asked Mr. Dulecki to assume that Plaintiff's description of her limitation was accurate and asked Mr. Dulecki whether Plaintiff would be able to perform any of her past relevant jobs (Tr. at 245).  Mr. Dulecki testified that he was aware of no jobs that Plaintiff would be able to perform under those circumstances.  *Id*.

### C.       Parties' Arguments

#### 1.       Plaintiff's Claims of Error

Plaintiff argues in her motion for summary judgment that the ALJ's RFC finding and the hypothetical question posed to the VE failed to accurately portray Plaintiff's limitations and mental abilities. In particular, Plaintiff argues that the ALJ found Plaintiff's major depressive disorder to be a "severe impairment" under step two of the sequential evaluation, but did not discuss Plaintiff's mental limitations when the ALJ ultimately found that Plaintiff was relegated to unskilled work.

Plaintiff points to three examples from Dr. Czarnecki's and Dr. Pedraza's reports that Plaintiff claims the ALJ did not address in his RFC finding nor in his hypothetical question to the vocational expert, namely: (1) Dr. Czarnecki's notation that Plaintiff had a moderate degree of limitation maintaining concentration, persistence and pace; (2) Dr. Czarnecki's notation that Plaintiff had a moderate degree of limitation in her ability to understand, remember and carry out detailed instructions, the ability to interact with the general public, the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes and the ability to respond appropriately to changes in the work setting (Tr. at 108, 112-113); and (3) Dr. Pedraza's notation that Plaintiff would have difficulty performing activities within a schedule, maintaining regular attendance, being punctual, performing at a consistent pace, maintaining social appropriate behavior, adhering to basic standards of neatness and cleanliness, responding appropriately to changes in the work setting and setting realistic goals and making plans independently of others (Tr. at 173-174).

### 2.      Commissioner's Counter-Motion for Summary Judgment

The Commissioner responds that Plaintiff's sole argument is based upon what she suggests is an internal inconsistency in the ALJ's decision, but that it is not fatally inconsistent for the ALJ to conclude that Plaintiff's depression, possible attention deficit disorder and alcohol abuse were severe, but nevertheless did not prevent Plaintiff from performing unskilled work.

Defendant notes that Plaintiff has not identified any provision in the Social Security Act nor in the regulations that requires an ALJ to assess RFC in a certain manner after finding a claimant experiences a severe impairment or combination of impairments (step two).  Defendant further notes that Plaintiff failed to identify any error in the ALJ's conclusion that Plaintiff was not fully credible, or in the ALJ's observation that Plaintiff's continued alcohol abuse contributed to her mental status.  In sum, Defendant argues that the decision of the ALJ should be upheld, as it is supported by substantial evidence.

## III.    DISCUSSION

### A.      *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *See Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *See Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found

during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

### B.     *Burden of Proof*

The "[c]laimant bears the burden of proving [her] entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only

for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [her] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C. *Analysis and Conclusions*

After review of the record, the undersigned concludes that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. Plaintiff's arguments that the ALJ commited reversible error by failing to include all of Plaintiff's alleged limitations into his hypothetical question to the vocational expert or into his ultimate RFC finding are unavailing.

As to the hypothetical question posed by the ALJ, it is well-established that an "ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Sec. of Health & Human Servs.*, 39 F.3d 115, 118-119 (6th Cir.1994), quoting *Hardaway v. Sec. of*

*Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir.1987); *see also Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 659, 662 (E.D.Mich.2004) ("ALJ took into account [the] [p]laintiff's depression ... by including limitations within the hypothetical ... limiting the possible jobs to simple, unskilled, and routine work").

Not all impairments deemed "severe" in step two need be included in the hypothetical. 20 C.F.R. § 404.1545(e); *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007). "The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 F.Supp.2d 489, 497 (E.D. Mich. 2005). The ALJ is only required to incorporate the limitations that he finds credible. *See Casey v. Sec'y of HHS*, 987 F. 2d 1230, 1235 (6th Cir. 1993). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, 1999 WL 98645, *3 (6th Cir. 1999). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

Here, the ALJ found that Plaintiff's was not fully credible given that her testimony that she had been sober since 2006 directly conflicted with her medical records, which indicated that Plaintiff continued to abuse alcohol well past that date. The undersigned finds no reason to

disturb the ALJ's credibility finding, nor does Plaintiff even attempt to argue in her motion for summary judgment that the ALJ committed error in his credibility finding.

As to the ALJ's RFC finding, residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004). "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e).

In making his RFC finding, the ALJ noted that Plaintiff's troubles "seem substantially related to her substance addiction, and such condition has shown improvement with treatment" (Tr. at 20). The ALJ further noted that Plaintiff's "daily activities are also compatible with a finding that she is capable of working. She maintained in a Function Report dated December 2005 that she drives, shopped for food, uses a checkbook, and reads... [that] the record shows that [Plaintiff] is independent in activities of daily living and able to engage in a variety of daily activities. She also testified at the time of the hearing that she likes reading and watching movies." *Id*. The undersigned finds that each of these findings is supported by substantial

evidence from the record. As such, the undersigned finds that the ALJ did not commit any error in arriving at Plaintiff's RFC.

In sum, after review of the record, the undersigned finds that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III.    RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED** and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

        S/Mark A. Randon
        Mark A. Randon
        United States Magistrate Judge

Dated:  August 28, 2009

### Certificate of Service

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, August 28, 2009, by electronic and/or ordinary mail.

        s/Melody R. Miles
        Case Manager to Magistrate Judge Mark A. Randon